Sidney A. Fine, J.
Respondent, Blue Bird Silk Manufacturing .Co., Inc. (hereinafter referred to as “Blue Bird”), commenced an arbitration proceeding against the three petitioners before the American Cotton Manufacturers Institute, Inc., seeking an award of damages against the petitioners for breach of four certain contracts. Petitioners have moved for a stay of the proposed arbitration on the ground that there is no valid or subsisting contract for arbitration between the parties.
■ Respondent Blue Bird is a manufacturer of textile woven fabrics,' and is located in the city of New York. The three petitioners are all located in Fitchburg, Massachusetts, and have common officers, stockholders and directors. Petitioner Wachusett Spinning Mills, Inc. (hereinafter referred to as “Wachusett”), operates a yarn spinning mill and is engaged primarily in the spinning of worsted woolen yarns and other long-staple yarns. Petitioner Fitchburg Yarn Company, Inc. (hereinafter referred to as “ Fitchburg ”), also operates a yarn spinning mill and is engaged primarily in the manufacture of cotton yarns. Petitioner Fitchburg Spinners Sales Corp. (hereinafter referred to as “ Fitchburg Sales ”), is a sales agent and factor servicing the other two petitioners.
In each instance, following negotiations between Mr. Norman Weil, vice-president of Blue Bird, and Mr. M. Fred Thoma, an executive officer of all three petitioners, respondent Blue Bird forwarded a-“ purchase order ” to petitioner Fitchburg, calling for the spinning of certain yarns to be supplied by Blue Bird, and specifying the quantities, colors and prices. Each order contained a provision for arbitration in the city of New York, in accordance with the rules of the predecessor of the American Cotton Manufacturers Institute, Inc., of “ all controversies arising out of, or relating to this contract, or any modification thereof ”. There were also a number of printed “ conditions ”, dealing with such matters as quality, quantity, delivery and shipment. On each order there appeared, below a perforated line, a form of “ acknowledgment ” to be signed and returned to Blue Bird. In each instance, the “ acknowledgment ” was *825 signed and returned to Blue Bird. The 1 ‘ acknowledgment’ form read as follows:
“We acknowledge Receipt of Tour Order and delivery will be made......................
................................... Firm.”
Subsequently, there was also forwarded to respondent, in duplicate, a document bearing the name of petitioner Wachusett at the top thereof, and described as ‘1 Confirmation of Accepted Order”. This “confirmation” referred to respondent’s purchase order number, and recited “ We have accepted your order subject to credit approval by our factors, as follows ”. There were then recited the same quantities, colors and prices which appeared in the Blue Bird purchase order, and a number of other provisions were set forth which did not appear in the Blue Bird order. The “confirmation” contained no arbitration clause, but did contain a printed provision that “ This contract shall be deemed to be a Massachusetts contract, and the laws of Massachusetts shall govern its validity, interpretation and performance.” The document bore the signature of petitioner Wachusett, and one of the copies sent to respondent was entitled “ Duplicate ”, and to the left of Wachusett’s signature appeared the words ‘ ‘ This is in accordance with our understanding ”, with a line thereunder for the purchaser’s signature. In each instance, a copy of the “ confirmation ” was signed by an officer of Blue Bird at the place indicated, and returned to Wachusett.
The primary question presented in whether the arbitration provision contained in respondent Blue Bird’s purchase order form became a part of the contract concluded in each instance between the parties, on the theory either that a valid and binding contract was effected by the signature and return to Blue Bird of the “ acknowledgment ” form attached to the purchase order, or that the arbitration provision was incorporated by reference in petitioner Wachusett’s subsequent “confirmation ”.
Petitioners urge that the Blue Bird purchase orders were nothing more than offers, which were never accepted by any of the petitioners, there having been nothing more than the acknowledgment of the receipt of such orders; that Wachusett’s “ confirmations ” were tantamount to counteroffers, since they contained provisions at variance with those of Blue Bird’s original offers, and thus operated as rejections of Blue Bird’s offers; and that the only contracts between the parties consisted of Wachusett’s “confirmations” which were on their face *826 completely integrated contracts and which contained no provisions for arbitration.
It is clear, however, that the signed ‘ ‘ acknowledgments ’ ’, which were transmitted to Blue Bird following the receipt of Blue Bird’s purchase orders, were more than mere receipts of orders, as urged by petitioners, for, in addition to acknowledging receipt of the orders, they went on to say that ‘ ‘ delivery will be made ”. It is true that the purchase orders recited that Blue Bird ‘ ‘ insisted ’ ’ on the insertion of definite delivery dates on the “ acknowledgment ” form and that no delivery dates were inserted in the signed ‘ ‘ acknowledgments ’ ’ returned to Blue Bird. The purchase orders, however, did not provide that they were conditioned upon compliance with that request, and, indeed, one of the printed “ conditions ” on the purchase order form was that “ delivery must actually be effected within the time stated on the purchase order”, otherwise Blue Bird reserved the right to cancel the order. The only reasonable construction of the statement in each of the signed “ acknowledgments ” that “ delivery will be made ” is that the order was accepted and that the party signing the “ acknowledgment ” form agreed to perform and make delivery in accordance therewith. Two of the orders stated that delivery was to be made “per letter of 5/9 from Mr. Weil ”, and that letter called for delivery before the end of June, 1958. As regards the other orders, there was an implied requirement that delivery be made within a reasonable time (cf. City of New York v. New York Central R. R. Co., 275 N. Y. 287, 292-293; Papaioannou v. Britz, 285 App. Div. 596, 600). Thus, although the “acknowledgments” did not use the word “accepted”, the express undertaking to make delivery in accordance with the orders constituted in each instance a legal acceptance and gave rise to a binding contract between the parties.
No significance in that regard attaches to the fact that Wachusett, after the return of each “ acknowledgment ”, forwarded to respondent its form entitled “ Confirmation ^ of Accepted Order ” containing no arbitration clause, which respondent signed, as being “in accordance with our understanding ”, and returned to Wachusett. Indeed, the fact that these documents are described therein as “ Confirmation of Accepted Order ” tends to confirm the view that the orders had been accepted prior to the issuance of the “confirmations”. Petitioners contend that the provision in each “ confirmation ”, that the contract was to be deemed a Massachusetts contract and governed by Massachusetts law as to validity, interpretation and performance, is inconsistent with the arbitration pro *827 vision contained in each of respondent’s purchase orders. There is no claim, however, that the provision for arbitration is unenforcible under Massachusetts law (cf. Matter of Marchant v. Mead-Morrison Mfg. Co., 252 N. Y. 284), and it would seem that an arbitration clause may validly provide that the arbitrators make their award in accordance with the law of a specified jurisdiction. There is, in short, no showing of any conflict or inconsistency between the arbitration clause and the provision for application of the law of Massachusetts. Actually, once it is established, as it is in this case, that the parties did enter into a contract providing for arbitration of ‘1 all controversies arising out of, or relating to this contract, or any modification thereof ”, any questions relating to the effect of subsequent alleged modifications, such as petitioners claim were effected by respondent’s acceptance of petitioner Wachusett’s “ confirmations ”, would be matters for the arbitrators to decide. (Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76; Matter of Aqua Mfg. Co. [Warshow & Sons], 179 Misc. 949, affd. 266 App. Div. 718.)
The case of Matter of Albrecht Chem. Co. (Anderson Trad. Corp.) (298 N. Y. 437) on which petitioners rely, is not in point. As the Appellate Division recently pointed out in Matter of Fields, Inc. v. American Hydrotherm Corp. (5 A D 2d 647, 649), the Albrecht case involved a situation “where the seller did not accept or adopt the purchaser’s form of order containing an arbitration provision, but instead forwarded its own independent memorandum without reference to the purchaser’s form ”. In the case at bar, on the other hand, as noted above, there was in each instance an acceptance of the purchase order containing the arbitration provision, and the subsequent “ Confirmation of Accepted Order ’ ’ specifically referred to Blue Bird’s purchase order.
Furthermore, even if the view were to be taken that no binding contract was effected between the parties until Blue Bird’s assent to the “ Confirmation of Accepted Order ” sent to it in each instance by Wachusett, the arbitration clause contained in each of Blue Bird’s purchase orders would seem to be incorporated by reference in Wachusett’s “ confirmations ”, by virtue of the specific reference made therein to Blue Bird’s purchase orders. As noted above, the “ confirmation” in each instance stated: “We have accepted your order '* * * as follows ”. The effect of that statement would seem to be that Wachusett thereby accepted each of the terms of the Blue Bird purchase order, except insofar as any of those terms were inconsistent with the new terms set forth in the Wachusett *828 “ confirmation ”. As noted above, none of the terms set forth in the Wachnsett “confirmation” was inconsistent with the arbitration provision embodied in the Blue Bird purchase orders. Though the Wachusett “ confirmation ” would in such circumstances constitute a counteroffer, that counteroffer, nevertheless, embodied the arbitration clause of Blue Bird’s original offer, and Blue Bird’s acceptance of the counter-offer would give rise to a binding contract embodying as one of its provisions the Blue Bird arbitration clause.
Matter of Fields, Inc. v. American Hydrotherm Corp. (5 A D 2d 647, supra) is here in point. In that case the parties reached an agreement after extended negotiations for the purchase by Fields from the seller, American Hydrotherm Corporation, of a heating and cooling system for use in its plant. As a result of those negotiations, American forwarded to Fields a ‘ ‘ Final Quotation ” which comprised a six-page document, containing, among other things, a provision for arbitration. That instrument was never signed by the parties, but Fields, some time after the quotation had been in its possession, signed and delivered to American its own purchase order which recited “ 1 Hot Water System as per quotation ”. Rejecting the contentions made by Fields that it never intended to assent to the arbitration provision and that it in fact was not aware of the arbitration clause which appeared in small print on the last page of American’s six-page “Quotation”, the Appellate Division held that Fields had ‘1 assented to the provisions of American’s Final Quotation by making its order 1 as per quotation ’ ”, and that it thereby “ indicated its willingness to accept all the terms contained in the final quotation, including the provision for arbitration” (5 A D 2d 649). The Appellate Division further stated (5 A D 2d 649): “ Although Fields did not sign the quotation itself, nevertheless, the order incorporating the quotation bore its signature and therefore, the effect is the same as though it had signed the quotation itself. Consequently, Fields must be charged with knowledge of all that the quotation contained. ’ ’
Petitioners further urge that the provision for arbitration is invalid because one of the rules of the arbitration tribunal named therein, which are made applicable by the terms of respondent’s orders, provides for a waiver of the right to counsel in the arbitration proceedings. The reply affidavit of respondent’s president points out, however, that the rule in question has been eliminated as to all contracts entered into after January 1, 1956. There is no denial of this statement. The letter of petitioners’ attorneys to the court, dated July 21, *829 1958, takes issue with various other unrelated statements contained in the reply affidavit, but significantly makes no attempt to controvert the statement regarding the deletion from the rules of the provision for the waiver of the right to counsel. Since all the contracts involved herein were entered into. in 1957, it is clear that there is no merit in this contention of petitioners.
Up to this point, the court has assumed that the ‘ ‘ acknowledgments ’ ’, which were returned, signed, to respondent, were authorized by and binding upon petitioner Wachusett. All of respondent’s orders were addressed to petitioner Fitchburg. “Acknowledgments ” of orders Nos. 459 and 460 were signed “Fitchburg Spinners Sales Corporation (Wachusett Spinning Mills, Inc.) By: B. York”. The “acknowledgment” or order No. 611 was signed “ Wachusett Spinning Mills, Inc. — Y ”. The fourth ‘f acknowledgment ” is missing, but. the moving-affidavit of petitioners’ officer, Thoma, admits that Wachusett acknowledged order No. 453, which was ultimately superseded by order No. 479. Thoma claims that Fitchburg Sales is merely a sales agent and factor, servicing- Wachusett, and that it had. no authority to enter into binding contracts for Wachusett, especially contracts containing an arbitration provision. Thoma also claims that B. York, the employee of Fitchburg Sales, who signed the 1 ‘ acknowledgments ’ ’, had no authority to enter .into' contracts prepared by another firm.
The only orders as to which this alleged lack of authority of Fitchburg Sales is urged are orders Nos. 459 and 460.- ‘ ‘ Acknowledgments ’ ’ of the other orders were by petitioner. Wachusett. As sales agent for Wachusett, Fitchburg Sales, regardless of its actual authority, possessed apparent or ostensible authority sufficient to bind Wachusett in its acceptance of orders from would-be purchasers. The fact that the accepted orders contained an arbitration clause does not alter this conclusion, for, as the Court of Appeals observed in Matter of Helen Whiting, Inc. (Trojan Textile Corp.) (307 N. Y. 360) at page 367: ‘ ‘ From our own experience, we can almost take judicial notice that arbitration clauses are commonly used in the textile industry ”. A customer dealing with a general sales agent has the right to assume that the latter has authority to enter into a contract, on behalf of its principal, containing an arbitration clause, particularly a textile contract which com-, rnonly contains such a provision.
• As to the claim- that B. York did not have authority to enter into the contracts embodied in orders Nos. 459 and 460, it should be observed that the“ confirmations ” of those orders and the *830 other orders here involved, which the petitioners admit were authorized, were signed by B. York. It may be that in accepting respondent’s orders, on the terms contained therein, B. York exceeded her actual authority, but she clearly possessed apparent or ostensible authority to bind her principal, since she was the person who signed and returned the “ acknowledgments ’ ’ forwarded by respondent, not to her but to her principal. If the signature “ Y ” on the “ acknowledgment.”’ of order No. 611 was that of B. York, the same conclusion must, be reached. If it was the signature of someone else, the ‘1 acknowledgment ’ ’ is likewise binding, since no attack upon the authority of anyone but B. York is made by petitioners. As to order No. 453, it does not appear who acknowledged it. This is of no importance, however, because even if it be assumed that the “ acknowledgment ” of the said order was unauthorized and was not binding on petitioners, that order was modified by two subsequent orders, the last of which was order No. 479. Order No. 479 was not a mere request for certain changes in the previous orders or contract, between the parties, but was a fully integrated contractual document, purporting on its face to be a complete contract superseding any earlier contract. It was retained by Wachusett without objection, after which petitioner Wachusett attempted to fill it. The retention of the order, including the arbitration clause (and the attempted compliance with its terms), constituted sufficient evidence of an agreement for arbitration (Matter of Helen Whiting, Inc. [Trojan Textile Corp.], supra; Matter of Japan Cotton Trading Co. v. Farber, 233 App. Div. 354; Matter of Exeter Mfg. Co. v. Marrus, 254 App. Div. 496; Matter of Fields Inc. v. American Hydrotherm Corp., 5 A D 2d 647, 649, supra).
The parties to the contracts are Wachusett and respondent. Wachusett acknowledged two of the four orders. The other two, signed by Fitchburg Sales, contained the name “ Wachusett Spinning Mills, Inc.” in parentheses. All four “ confirmations ” were sent by Wachusett, and it was Wachusett which attempted to fill the orders. The invoices forwarded to respondent state that the shipments were made by Wachusett. Fitchburg Sales is, however, a proper party to the arbitration, since it sent the invoices, as factor for Wachusett, reading “ This account is payable * * * to Fitchburg Spinner Sales Corporation ”, and claimed to be entitled to payment of the price. Fitchburg, on the other hand, is not a proper party to the arbitration. It did not sigp the “ acknowledgements ”, or send any “ confirmations ”, or attempt to fill any of the orders. It did not become a party to any written agreement *831 for arbitration, and it makes no claim against respondent, as assignee of any of the contracts, or on other grounds.
The motion for a stay is granted only as to petitioner Fitchburg Yarn Company, Inc., and otherwise denied.
Settle order.