**SOUTHEASTERN ENAMELING CORPORATION, Plaintiff-Appellant,**

v.

**GENERAL BRONZE CORPORATION et al., Defendants-Appellees.**

No. 28682.

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1970.

Peyton D. Bibb, Birmingham, Ala., for plaintiff-appellant; Wingo, Bibb, Foster, Conwell & Strickland, Birmingham, Ala., of counsel.

Robert McD. Smith, Lawrence B. Clark, Birmingham, Ala., David Schmerler, New York City, for defendants-appellees; Lange, Simpson, Robinson & Somerville, Birmingham, Ala., and Hays, Feuer, Porter & Spanier, New York City, of counsel.

Before RIVES, WISDOM and GODBOLD, Circuit Judges.

RIVES, Circuit Judge:

This is a common law action by Southeastern for breach of contract with jury trial demanded. In its answer General Bronze pleaded as its "First Defense" that the contract contained a provision that New York law should govern its construction and a further provision

"that before either party exercises any right of litigation 'any dispute or claim involving interpretation or application of any provision of this order shall be submitted to arbitration in New York City under the then existing rules of the American Arbitration Association. * * * The decision of the arbitrator shall be final and binding and a condition precedent to any right of legal action.' "

At pretrial this action was consolidated for trial with an action by Southeastern on another contract in which General Bronze pleaded the same "First Defense." Also at pretrial Southeastern denied that the contracts upon which its claims were based validly contained any such provisions, and in the alternative asserted that under the circumstances of each case General Bronze waived any right to insist upon arbitration. The district court ordered in the consolidated action that a separate trial be had of the foregoing issues.

At the conclusion of the evidence, the district court peremptorily instructed the jury that it must answer "yes" to the following special interrogatory:

"Did the plaintiff and defendant enter into a contract wherein it was agreed that such contract was to be construed in accordance with the laws of the State of New York and that any dispute or claim involving interpretation or application of any of the provisions thereof should be submitted to arbitration in New York City before either party thereto might resort to litigation?"

The jury having returned its verdict accordingly, the district court entered an order staying all further proceedings until the arbitration had been had in ac-

cordance with the terms of the agreement.[1]

The district court further entered an order permitting an immediate appeal under 28 U.S.C.A. § 1292(b),[2] and a panel of this Court granted leave to appeal.

■ While we recognize the wisdom of thus placing jurisdiction beyond question, we think that appellate jurisdiction exists under § 1292(a) (1),[3] because the order granting a stay pending arbitration in this action at law is analogous to an injunction order.[4]

Whether the district court erred in directing the jury's verdict depends primarily upon whether Southeastern is bound by all of the terms of a written contract signed by its authorized agent who testified that he read some but not all of its terms. In most cases Southeastern would be bound by all terms of the contract, but, as Professor Corbin has well said in discussing mistakes caused by failure to read a document before signing, " 'Broad general statements' must always be weighed in relation to the facts of the specific case." 3 Corbin on Contracts § 607, p. 659. We turn, therefore, to the controlling facts of this case.

Southeastern operated a processing plant in Springville, St. Clair County, Alabama, in which it put baked enamel finish on metal sheets and made them with other core materials into sandwich-type laminated panels for use in construction of buildings. General Bronze was a relatively large construction contractor with its principal place of business in Woodbury, New York, and plants at various locations including Medley (near Miami), Florida.

In 1968 and early 1969 these two parties entered into several contracts for the lamination of metal panels. The first such contract was signed by Southeastern on July 30, 1968 and was to furnish laminated panels to General Bronze for use in construction of an office building in Miami, Florida. In the second contract, signed by Southeastern on September 6, 1968 and the subject of this appeal, Southeastern was to furnish laminated aluminum panels to be delivered to General Bronze in Medley, Florida, to be used in construction of the University Hospital at Augusta, Georgia. The Miami contract and the Augusta contract were the two involved in the consolidated action in the district court, but Southeastern did not appeal from the judgment in the Miami case.

---

1. The pertinent section of the Federal Arbitration Act reads:

   "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

   9 U.S.C.A. § 3.

2. In pertinent part:

   "(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order in-

   volves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order * * *."

3. "(a) The courts of appeals shall have jurisdiction of appeals from:

   "(1) Interlocutory orders of the district courts of the United States * * * granting * * * injunctions * * *"

4. Baltimore Contractors, Inc. v. Bodinger, 1955, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233, and the annotation attached, 99 L.Ed. 241; Kirschner v. West Company, 3 Cir. 1962 (en banc), 300 F.2d 133.

There were two later contracts, one entered into in September 1968 which related to an office building in New Jersey and the other signed in January 1969 for panels for the Time and Life Building in Chicago. In all four instances General Bronze submitted to Southeastern in Alabama its form of subcontract already signed by it, and Mr. J. P. Schloffman, Southeastern's vice president and general manager, signed on its behalf and mailed the form back to New York. Mr. Schloffman testified that in each instance he read the contract only partially and did not know of the provisions that the contract was to be construed in accordance with the laws of New York and that any disputes should be submitted to arbitration in New York City.

Those provisions were printed on the back of General Bronze's single sheet form subcontract. The front of the sheet provided lines for signature of the other contracting party under the word "ACCEPTED," and in capital letters above the signature lines appeared the following:

"IT IS MUTUALLY AGREED THAT THE CONDITIONS ON THE BACK HEREOF ARE A PART OF THE UNDERSTANDING BETWEEN US.
"ACCEPTANCE— IN ORDER TO BECOME A VALID AND BINDING AGREEMENT BETWEEN US, ORDER MUST BE ACCEPTED BY YOU. PLEASE SIGN AND RETURN TO US IMMEDIATELY THE ACCEPTANCE COPY WHICH IS ATTACHED HERETO, AND WHICH WILL CONSTITUTE YOUR ACCEPTANCE OF ALL CONDITIONS HEREIN."

■ The front of the sheet form as to the Augusta job, which is the subject of this appeal, was labelled in capital letters near its top "CONFIRMATION." Mr. Schloffman testified in substance that he checked this "CONFIRMATION" sufficiently to see that it contained what had already been agreed on

about the kind of panels and price, acknowledged it with his signature and sent it back to General Bronze. Except for the earlier Miami contract, there had been no earlier reference to the disputed provisions about applying the law of New York and arbitration. Southeastern argues that under the *Boeing* [5] test it was for the jury to say whether its agent was justified in treating the document simply as a confirmation of the terms of the contract already agreed on. We do not agree for several reasons. First, General Bronze did not clearly state its understanding that all of the terms of the contract had been agreed on. The Miami job contract, closed about a month earlier than this Augusta job contract, had been on the same form subcontract purchase order, in that instance labelled S 3932. General Bronze's telegram to Southeastern, which Southeastern insists was an unconditional acceptance of its offer, read in pertinent part: "Enter our order SC 3939 and proceed immediately with procurement. Confirmation will follow shortly." General Bronze's letter confirming that telegram contained the sentence: "Our SC 3939 will be issued shortly to cover our requirements and you are to proceed immediately with procurement of all materials." Thus, in both the telegram and the letter, General Bronze undertook to signify its intention that its subcontract 3939 would be the closing document. Schloffman testified that he did not know what the abbreviation "SC 3993" indicated. However, he conceded that nobody misrepresented the documents to him or induced him not to read them (App. 118). There being no evidence of fraud or misrepresentation, the applicable law would seem to be stated by the Supreme Court of Alabama in Ben Cheeseman Realty Co. v. Thompson, 1927, 216 Ala. 9, 112 So. 151, 153:

"It is admitted by both sides that no question of fraud is presented. And in its absence where contracts contain extraneous references of fact and to

---

5. Boeing Company v. Shipman, 5 Cir. 1969, 411 F.2d 365, 374.

other documents, the same enters therein to the extent that it is pertinent, and the parties are bound thereby. And he who omits to inform himself as to such fact or contents and extent of such other writing referred to, in so far as it is reasonable and in contemplation of parties to contract, is bound thereby."

Thus we think Southeastern is in error in treating the earlier telegram and letter as a completed contract.

Second, it is clear that the word "CONFIRMATION" on SC 3939 was not the cause of Schloffman's failure to read all of its terms. He admitted reading enough to see that it contained some terms not stated in the earlier telegram or letter (App. pp. 104–108). The earlier SC 3932 which closed the subcontract as to the Miami job, and at least one of the later subcontracts, did not contain the word "CONFIRMATION." Nonetheless, Schloffman testified that he omitted to read all of the terms of those contracts before signing them.

█ Assuming arguendo the correctness of Southeastern's contention that the earlier telegram and letter constituted a binding contract, it was subject to modification without additional consideration.[6] The subject of terms additional to or different from those already agreed on being set forth in a written confirmation is dealt with in a section of the Uniform Commercial Code, now appearing as Title 7A, Code of Alabama § 2–207, which provides in part that "The additional terms are to be construed as proposals for addition to the contract." The Official Comment appearing under § 2–207 explains that provision in part as follows: "If they are such as materially to alter the original bargain, they will not be included unless *expressly agreed to by the other party*." (Emphasis supplied.)

The question of whether SC 3939 became a completed contract is governed by the law of Alabama. The Supreme Court of Alabama has well stated:

"One who has executed a written contract in ignorance of its contents cannot set up his ignorance to avoid the obligation in the absence of fraud or misrepresentation. Prestwood v. Carlton, 162 Ala. 327, 50 So. 254; Regional Agricultural Credit Corp. [of Washington, D. C.] v. Hendley, 251 Ala. 261, 37 So.2d 97."

Grady v. Williams, 1953, 260 Ala. 285, 70 So.2d 267, 272.

In Lester v. Walker, 1911, 172 Ala. 104, 55 So. 619, the Alabama Supreme Court said:

"In the absence of misrepresentation, fraud, or deceit, the execution of an instrument by one who can read and write is binding upon him, even though he did not read it, or was ignorant of its contents. Bank of Guntersville v. Webb & Butler, 108 Ala. 132, 19 South. 14."

That is in accord with the generally prevailing law.[7]

We conclude that the district court properly directed the jury's verdict, unless Southeastern sustained its alternative contention that General Bronze waived the right to insist upon arbitration.

█ The evidence was undisputed that the contract evidenced a transaction involving commerce as defined in the Federal Arbitration Act, 9 U.S.C. § 1. The validity, revocability and enforcement of the agreement are thus subject to that Act. 9 U.S.C. § 2. Particularly, " * * * in passing upon a § 3 [8] application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate."

6. See the section of the Uniform Commercial Code enacted by Alabama Act 1965 No. 549 appearing as Title 7A, Code of Alabama § 2–209.

7. See 17 C.J.S. Contracts, § 137; 17 Am. Jur.2d Contracts, § 149; 3 Corbin on Contracts, § 607; 1 Williston on Contracts, 3rd ed., § 95A.

8. Quoted in footnote 1, *supra*.

Prima Paint v. Flood & Conklin, 1967, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270.

The waiver claimed by Southeastern is based on a provision of the arbitration agreement that "There shall be no delay in the work prior to or during any arbitration proceeding." On March 11, 1969 General Bronze telegraphed Southeastern that "You have breached terms and conditions of our order S/C 3939, University Hospital. We are this day invoking applicable provisions of our contract with you and arranging for arbitration in New York City under existing rules of the American Arbitration Association."

Mr. Brown, Chairman of the Board of Southeastern, testified that a week later, on March 18, at the conclusion of a meeting in New York between representatives of the two companies

> "They told us not to do any more work on any contract. We had finished Miami and had work to do on Augusta and Chicago and they told us not to do any more work and requested that we send them the Chicago panels on hand and they would not send any more material for us to work up. And they were going to withhold all money on all jobs."

General Bronze seeks to justify its conduct by another provision of the contract which reads:

> "TIME IS OF THE ESSENCE: the date or dates of delivery herein specified must be strictly adhered to by the Seller. Seller agrees to indemnify and save Purchaser harmless from any loss, penalty, payment, and liability or damage resulting from Seller's failure or refusal to make timely delivery. If Seller for any reason does not comply with the schedule or is otherwise in default, Purchaser, in addition to other rights that it may have, shall have the option of either approving a re-

vised delivery schedule or terminating the order without any liability on the part of Purchaser to Seller on account thereof, and Seller shall be responsible for all damages."

Whether General Bronze's termination of the contract was justified under that provision is a matter to be first decided in the arbitration. Clearly, General Bronze's conduct furnished no substantial evidence of a waiver of its right to insist upon arbitration.[9]

The judgment is affirmed.

---

9. Thus, we agree with the district judge's statement that, "I see no evidence of waiver." (App. 160). Under our decision in General Guaranty Ins. Co. v. New Orleans General Agency, Inc., 5 Cir. 1970, 427 F.2d 924, 929, 930, the issue of waiver *vel non* was for the court.