**N&D FASHIONS, INC., a Minnesota Corporation and Nelly Don, Inc., a Missouri Corporation, Appellees,**

v.

**DHJ INDUSTRIES, INC., a New York Corporation, Appellant.**

No. 76–1037.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1976.

Decided Dec. 21, 1976.

Rehearing Denied Feb. 10, 1977.

Jack Hassid (argued), New York City, Schermer, Schwappach, Borkon & Ramstead, Minneapolis, Minn., on briefs, for appellant.

Allen I. Saeks (argued), Edward M. Moersfelder, Minneapolis, Minn., on brief, for appellees.

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

WEBSTER, Circuit Judge.

This litigation centers upon the effect to be given to a condition of sale requiring arbitration of disputes that was contained in the seller's acknowledgment of the buyer's written purchase order. It implicates the sometimes murky provisions of Section 2–207 of the Uniform Commercial Code,[1] which was intended to put to rest uncertainty arising from the "battle of the

---

* Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. U.C.C. § 2–207 provides as follows:

forms." Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332.[2]

Nelly Don, Inc. is engaged in the domestic manufacture and wholesale of female wearing apparel; N&D Fashions, Inc., its wholly-owned subsidiary, is engaged in the purchase of fabric for foreign manufacture into wearing apparel which is imported into the United States for sale. DHJ Industries, Inc. is engaged in the manufacture and sale of fabric to the apparel trade.

In April, 1973, I. H. Shriber, an officer of Nelly Don who was acting as an agent of N&D, met with representatives of DHJ concerning the purchase of certain fabric. Shriber informed DHJ of N&D's special needs, specifically emphasizing that the fabric dye had to be colorfast and that non-colorfast dye would thus be unacceptable. The parties orally agreed that N&D would purchase and DHJ would sell some 75,000 yards of fabric, finalizing solely the type, color, amount, price, and terms of delivery.

Shriber confirmed the agreement by telephone a few days later, after which he sent a Nelly Don form purchase order to DHJ setting forth the amount and type of fabric and the purchase price. He believed that this order form would, when accepted by an agent of DHJ, constitute the written agreement of the parties. No clause pertaining to arbitration was contained in the document, and at the bottom of the form were the words:

This Purchase Order shall become a binding contract when acknowledged by Seller, or upon whole or partial shipment by Seller.

In response, Shriber received four documents which confirmed, by statement of essential terms, the purchase order. After examination of the documents, Shriber signed three and his secretary signed the fourth with his name. The bottom of the order form read: "PLEASE SIGN AND RETURN THIS COPY"; another statement immediately above the blanks provided for signatures read:

THIS CONTRACT IS SUBJECT TO ALL THE TERMS AND CONDITIONS PRINTED ON THE REVERSE SIDE.

On the reverse side, in fine print, were sixteen various terms and conditions, paragraph 9 of which provided:

Arbitration: Any controversy arising under, or in relation to, this contract shall be settled by arbitration. If the parties are unable to agree respecting the time, place, method or rules of the arbitration, then such arbitration shall be held in the

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

2. Nelly Don, Inc. is a Missouri corporation with its principal place of business in Minnesota; N&D Fashions, Inc. is a Minnesota corporation with its principal place of business in Minnesota; DHJ Industries, Inc. is a New York corporation with its principal place of business in New York; and the amount in controversy exceeds $10,000. The complaint alleges that the tortious conduct of DHJ caused injury and property damage to Nelly Don and N&D within the State of Minnesota and it would thus appear that the cause of action has a nexus with that state sufficient to cause its law to be applied so far as state law is applicable in this case. Neither side has addressed this question on appeal and we find it unnecessary to resolve it since Minnesota, Missouri and New York have each enacted UCC § 2–207 without modification. See Minn.Stat.Ann., Ch. 336, § 336.1–101 et seq.; Mo.Rev.Stat. Ch. 400, §§ 400.1–101 et seq.; N.Y.Cons.Laws, UCC § 1–101 et seq.

City of New York, in accordance with the laws of the State of New York and the rules then obtained of the General Arbitration Council of the Textile Industry.

Subsequent invoices sent by DHJ contained statements with respect to proper fabric care upon which N&D contends it relied when it relied when accepting the fabric and when labeling its finished products with the words "Machine Washable." After sale of the products, it was allegedly determined that the fabric was not washable or colorfast as represented.

N&D and Nelly Don then brought suit for misrepresentation and fraud. DHJ moved to stay the proceedings pending arbitration in accordance with the terms of its order form and Section 3 of the Arbitration Act, 9 U.S.C. § 3.[3]

The District Court, applying the Uniform Commercial Code but not expressly determining which state's law was applicable,[4] held that the parties had entered into an agreement for the purchase and sale of fabric but that the DHJ arbitration provision was a proposal for an additional term which constituted a material alteration of the contract. It found that Shriber did not manifest consent to the provision by his signing of the order form since he had no knowledge of such provision and there was no express indication on the front of the form that such a provision was contained on the reverse. It therefore held that the parties did not enter an agreement to arbitrate and thus denied the motion for stay pending arbitration.

DHJ appeals, claiming that the District Court erred in failing to find an agreement to arbitrate. Our jurisdiction is properly found under 28 U.S.C. § 1292(a)(1).[5] We reverse.

## I.

It is undisputed that the parties reached an agreement with respect to the nature and quantity of the merchandise to be sold and delivered by appellant DHJ, as well as the price to be paid by the buyers. The Uniform Commercial Code does not require that all of the terms of the agreement be decided provided "the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." Uniform Commercial Code § 2–204(3). A problem is presented, however, when an acceptance or confirmation contains terms which are "additional to or different from" an offer or prior agreement. Under Uniform Commercial Code § 2–207,[6] if the dealings are between merchants, the additional terms become a part of the agreement provided (1) the original offer did not expressly preclude such additions (the offer here did not), (2) the additions do not materially alter the agreement, and (3) no seasonable notice is given of objections to the additions (none was given here). From this it follows that the provision for arbitration in this case, as a proposed additional term, became a part of the agreement unless, as the District Court found, it was a material alteration of the agreement.

The District Court relied upon *Application of Doughboy Industries, Inc.*, 17 A.D.2d 216, 233 N.Y.S.2d 488, 1 UCC Rep. 77 (1962). This was a pre-Code case in which the New York state court articulated a "special rule" in New York that "the agreement to arbitrate must be direct and the intention made clear, without implication, inveiglement or

---

**3.** 9 U.S.C. § 3 provides as follows:

If any suit or proceedings be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,

providing the applicant for the stay is not in default in proceeding with such arbitration.

**4.** *See* note 2, *supra.*

**5.** *See Gavlik Construction Co. v. H. F. Campbell Co.*, 526 F.2d 777, 781 (3d Cir. 1975); *Garner Lumber Co. v. Randolph E. Valensi, Lange, Inc.*, 513 F.2d 1171, 1172 (4th Cir. 1975); *Brannon v. Warn Bros., Inc.*, 508 F.2d 115, 118 (9th Cir. 1974).

**6.** *See* note 1, *supra.*

subtlety." *Id.*, 233 N.Y.S.2d at 492, 1 UCC Rep. at 80. Speaking for the court, Judge Breitel said, "It follows then that the existence of an agreement to arbitrate should not depend solely upon the conflicting fine print of commercial forms which cross one another but never meet." *Id.*, 233 N.Y.S.2d at 493, 1 UCC Rep. at 81. It is significant that the purchase order in that case disavowed the future application of any subsequent differing acknowledgment, which would have precluded incorporation of the arbitration clause into the agreement under § 2–207(2)(a).

■ A clause will be held to "materially alter" a contract when it would "result in surprise or hardship if incorporated without express awareness by the other party." Uniform Commercial Code § 2–207, Comment 4. Official Comments 4 and 5 provide examples of terms which would and would not materially alter a contract, and an arbitration clause is listed under neither. While other cases have held that an arbitration clause would materially alter a contract under § 2–207,[7] the better reasoned position is that the question whether an additional term in a written confirmation constitutes a "material alteration" is a question of fact to be resolved by the circumstances of each particular case. *See Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 10 UCC Rep. 585, 595 (6th Cir. 1972); *In re John Thallon & Co. and M&N Meat Co.*, 396 F.Supp. 1239, 17 UCC Rep. 31, 38 (E.D.N.Y.1975) (each holding that whether an arbitration clause constitutes a "material alteration" is a question of fact).

DHJ contends that the District Court's finding was clearly erroneous, as it disregarded the widespread use of arbitration clauses in the textile and garment industries, which gives a merchant reason to know that such clauses will be inserted in textile contracts.[8] Nelly Don and N&D assert, and DHJ does not deny, that arbitration was never mentioned during the course of their negotiations. There was no arbitration provision in the Nelly Don purchase order, and there was no evidence regarding industry practices or the past experience, if any, of Nelly Don and N&D with such clauses. Shriber testified that he did not read the clause.

■ We do not think it was incumbent upon the District Court to take judicial notice of industry practice, nor can we fault its finding upon a bare record. While it is generally recognized that commercial arbitration has had its principal use and development as a means of resolving disputes in the garment and fabric industries, and from this it may be inferred that the buyers should not have been surprised or subjected to unnatural hardship upon finding the clause in the contract, we cannot say on this record that the District Court was clearly erroneous in holding that the arbitration provision in DHJ's acknowledgment form was a "material alteration."

## II

The effect of this holding is that we may not presume acceptance from mere failure

---

**7.** *See Frances Hosiery Mills, Inc. v. Burlington Industries, Inc.*, 285 N.C. 344, 204 S.E.2d 834, 14 UCC Rep. 1110, 1118 (1974) (textile industry); *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.App.3d 987, 101 Cal.Rptr. 347, 10 UCC Rep. 1020, 1027 (1972). *But see In re C.M.I. Clothesmakers, Inc.*, 85 Misc.2d 462, 380 N.Y.S.2d 447, 17 UCC Rep. 911, 912–13 (N.Y. Sup.Ct.1975) (common use of arbitration clauses in textile industry warrants finding that such is not a "material alteration" because merchant had "reason to know" that such a clause would be included in a confirmation); *Klockner, Inc. v. C. Itoh & Co.*, 17 UCC Rep. 915, 916–17 (N.Y.Sup.Ct.1975) (same result re steel industry).

**8.** Many of the cases tripping over [Sections 2–201(2) and 2–207(2)] have derived from the textile industry where the practice of executing signed written agreements is as rare as Christian charity. In this multi-billion dollar trade, orders are usually received orally and followed by some form of unilateral confirmation. Because arbitration is common to the industry, the written confirmation usually contains a clause to arbitrate future disputes. No one objects to this clause, because the confirmation is received, filed, and never again referred to, unless a dispute arises.

Duesenberg, "General Provisions, Sales, Bulk Transfers and Documents of Title," 30 Business Lawyer 847, 853 (1975).

to object; the arbitration clause in this case will not be considered a part of the agreement unless it was in fact agreed to by N&D.

The test to be applied is found in Uniform Commercial Code § 2–207, Comment 3:

> Whether or not additional or different terms will become part of the agreement depends upon the provisions of subsection ■. If they are such as materially to alter the original bargain, they will not be included *unless expressly agreed to* by the other party. [Emphasis added].

■ The only mutually executed documents evidencing the agreement are the acknowledgments which DHJ sent to Nelly Don and which Shriber "accepted" and returned to DHJ. These contracts clearly stated, just above the parties' signatures, that they were "subject to all the terms and conditions printed on the reverse side." The arbitration clause was printed on the reverse side and it would thus appear that the clause, although a material alteration to the oral agreement, was "expressly agreed to" by Nelly Don. Appellees contend, however, as the District Court found, that Shriber's failure to read the contracts, coupled with the absence of the word "arbitration" on the front of the document to indicate the presence of an arbitration clause on the reverse, precluded actual consent to the inclusion of this clause in the final agreement. We disagree.

■ The holding of the District Court ignores the general rule of contract law that, in the absence of fraud, misrepresentation or deceit, one who executes a contract cannot avoid it on the ground that he did not read it or supposed it to be different in its terms. *See* 17 C.J.S. Contracts § 137 (1963). An example of application of this rule in the context of § 2–207 is *Southeastern Enameling Corp. v. General Bronze Corp.*, 434 F.2d 330, 8 UCC Rep. 469 (5th Cir. 1970). There, a telegram and letter had established a contract between a manufacturer and a construction contractor, but the manufacturer subsequently sent his usual form contract (entitled "Confirma-

tion"), containing clauses stipulating applicable law and providing for arbitration, to the contractor. An agent of the contractor signed the contract, but did not read all of the reverse side and thus was not aware of the stated provisions. Above the line for his signature, the contract stated:

IT IS MUTUALLY AGREED THAT THE CONDITIONS ON THE BACK HEREOF ARE A PART OF THE UNDERSTANDING BETWEEN US.

The Fifth Circuit, construing the terms as a material alteration, held that the contractor expressly agreed to the alteration by virtue of its agent's signature, regardless of the agent's unawareness of the provisions. Quoting *Grady v. Williams*, 260 Ala. 285, 70 So.2d 267, 272 (1953), and *Lester v. Walker*, 172 Ala. 104, 55 So. 619 (1911), the court stated:

> One who has executed a written contract in ignorance of its contents cannot set up his ignorance to avoid the obligation in the absence of fraud or misrepresentation.

> \* \* \* \* \* \*

> In the absence of misrepresentation, fraud, or deceit, the execution of an instrument by one who can read and write is binding upon him, even though he did not read it, or was ignorant of its contents. [Citation omitted].

434 F.2d at 334, 8 UCC Rep. at 473.

■ We adopt the reasoning of the Fifth Circuit and decline to impose in the case of arbitration provisions special and unique requirements which are concededly not applicable to other additional terms and conditions. While a party may not be subjected to a provision which materially alters the contract by failing to object to it, he cannot avoid the effect of his written acceptance of a contract which expressly, above his signature on the face of the contract, incorporates the provisions on the reverse side of the document. There being no evidence of fraud, misrepresentation or deceit in the execution of the acceptance, it follows that the agreement to arbitrate became a part of the agreement and must govern the reso-

lution of the dispute between the parties which produced this litigation.

## III.

■ The District Court found that there was no agreement to arbitrate. It thus did not address the question whether, given the existence of such an agreement, N&D is obligated to arbitrate this particular dispute.

It is clear, first, that this dispute is within the terms of the arbitration agreement. The arbitration clause is applicable to "[a]ny controversy arising under, or in relation to, this contract." While N&D's claim is nominally based on fraud and misrepresentation rather than breach of contract, it plainly arises "in relation to" the contract, and so is within the scope of this broad arbitration clause. *See Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 412–13 (2d Cir. 1959), *cert. granted*, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, *dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

Second, the fraud and misrepresentation claim is not one which would defeat the duty to arbitrate. At most, N&D claims fraud in the inducement to enter the contract of sale, rather than fraud in the inducement to enter the agreement to arbitrate. Fraud of the first type does not affect the duty to arbitrate.

This action is governed by § 3 of the Federal Arbitration Act, 9 U.S.C. § 3. The Supreme Court has stated:

> [I]n passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Thus, a claim of fraud in the inducement to enter the contract, because it does not go to the "making [and performance] of the agreement to arbitrate," is properly left to the arbitrator. *Prima Paint Corp. v. Flood & Conklin Mfg.*

*Co., supra; Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra*, 271 F.2d at 410.

Finally, N&D raises several defenses to the duty to arbitrate: laches or waiver of the right to arbitrate, lack of capacity on the part of Shriber to commit N&D to arbitration, failure of DHJ to demand arbitration, and the public policy nature of the issues raised by Count II of the complaint. N&D urges that each of these defenses requires further proceedings in the District Court. This contention is without merit.

■ The basis of the waiver claim here is unclear, because "waiver" in the present context can have two distinct meanings. First, "waiver" can mean that the party proceeding under § 3 "is . . . in default in proceeding with such arbitration," and so under the terms of the Arbitration Act is not entitled to a stay. This is a question for determination by the courts. *Halcon International, Inc. v. Monsanto Australia Ltd.*, 466 F.2d 156, 161 (7th Cir.), *cert. denied*, 404 U.S. 949, 92 S.Ct. 286, 30 L.Ed.2d 266 (1971); *Cornell & Co. v. Barber & Ross Co.*, 123 U.S.App.D.C. 378, 360 F.2d 512 (1966). A default occurs when a party "actively participates in a lawsuit or takes other action inconsistent with" the right to arbitration. *Cornell & Co. v. Barber & Ross Co., supra*, 360 F.2d at 513. Here, DHJ demanded arbitration and moved for a stay immediately upon the filing of the complaint; plainly, it took no action inconsistent with the right to arbitration. *See Halcon International, Inc. v. Monsanto Australia Ltd., supra*, 446 F.2d at 161. There has been no waiver in this sense.

■ Alternatively, "waiver" can be used in the sense of "laches" or "estoppel." In this sense, waiver applies to bar arbitration when the process would be inequitable to one party because relevant evidence has been lost due to the delay of the other. *Trafalgar Shipping Co. v. International Milling Co.*, 401 F.2d 568, 571 (2d Cir. 1968). Waiver in this "laches" sense is generally an issue for the arbitrator,[9] and we leave it

---

9. An exception exists when the laches claim goes to an issue which is otherwise properly before the court. *See Trafalgar Shipping Co. v.*

*International Milling Co., supra.* There is no contention that this is the case here.

to the arbitrator here. *Halcon International-al, Inc. v. Monsanto Australia Ltd., supra; Trafalgar Shipping Co. v. International Milling Co., supra. See also Hanes Corp. v. Millard,* 531 F.2d 585, 599 (D.C.Cir. 1976). Thus, in neither the default nor the laches sense does DHJ's claim of waiver require further proceedings in the District Court.

 N&D's second defense is that Shriber had no authority to enter an arbitration agreement on its behalf. This is a question for decision by the courts, because it goes expressly to the making of the agreement to arbitrate. 9 U.S.C. § 4; *see American Safety Equip. Corp. v. J. P. Maguire & Co.,* 391 F.2d 821, 827 (2d Cir. 1968). The claim here is plainly without merit. It is conceded that Shriber had express authority to negotiate the purchase contract. N&D claims that his express authority was limited to color, quantity, type, price, and delivery terms, and did not extend to an arbitration term. However, as purchasing agent, Shriber had at least apparent authority to enter any agreements reasonably necessary to the sale, including an arbitration agreement. 2A C.J.S. Agency § 217 (1972); *Application of Wachusett Spinning Mills, Inc.,* 12 Misc.2d 822, 177 N.Y.S.2d 938 (Sup.Ct.1958), *modified on other grounds,* 7 A.D.2d 382, 183 N.Y.S.2d 601 (1959), *aff'd* 6 N.Y.2d 948, 190 N.Y.S.2d 1011, 161 N.E.2d 222. In the absence of any expression to the contrary by N&D (and there has been no contention that any such expression was made), DHJ was entitled to rely on this authority.

 N&D's third defense is that it never received a demand for arbitration, so that DHJ is precluded from seeking arbitration now. This is but a variant of the laches or estoppel argument discussed above; like that argument, it is within the province of the arbitrator.

N&D's final defense is based on *American Safety Equipment Corp. v. J. P. Maguire & Co.,* 391 F.2d 821 (2d Cir. 1968). There, the Second Circuit held that a claim that an agreement was unenforceable be-

cause it violated the antitrust laws could not be submitted to arbitration. The Court was led to its conclusion by "the pervasive public interest in enforcement of the antitrust laws, and the nature of the claims that arise in such cases . . . ." *Id.,* 391 F.2d at 827–28.

 The second count of the instant complaint alleges in effect that DHJ made false representations relating to the compliance of its fabric and methods with certain standards of the Textile Distributors Association and the Federal Trade Commission. There is nothing to show, however, either a Congressional purpose or a public necessity that such a claim of misrepresentation be resolved by a court rather than an arbitrator. As a defense to arbitration, this contention is without merit.

We conclude, then, that the parties entered an agreement to arbitrate, that the disputes presented here are within the scope of that agreement, and that Nelly Don and N&D have advanced no colorable defenses to arbitration which are cognizable in the courts. The order of the District Court is reversed, and the case remanded with directions to grant the stay of proceedings.