Christian **PARLER** et al., individually and on behalf of others similarly situated, Plaintiffs,

v.

**KFC CORPORATION, Defendant.**

**Case No. 05–CV–2198 (PJS/JJG).**

United States District Court, D. Minnesota.

Jan. 4, 2008.

Paul J. Lukas, Donald H. Nichols, and Michele R. Fisher, Nichols Kaster & Anderson, PLLP, for Plaintiffs.

Jack L. Wilson, Robert P. Davis, and Robert C. Varnell, Mayer, Browne, Rowe & Maw LLP; Robert R. Reinhart and Gabrielle D. Mead, Dorsey & Whitney, LLP, for Defendant.

## MEMORANDUM OPINION AND ORDER

PATRICK J. SCHILTZ, District Judge.

About a third of the roughly 1000 plaintiffs in this two-year-old class action have

decided that, rather than continue to litigate their disputes with defendant KFC Corporation ("KFC"), they would instead like to take their disputes to arbitration. KFC moves for an order declaring that those plaintiffs have waived the right to arbitrate and enjoining them from proceeding with arbitration. The Court grants KFC's motion.

## I. BACKGROUND

Plaintiffs are current and former assistant managers at Kentucky Fried Chicken restaurants. They contend that KFC violated the Fair Labor Standards Act ("FLSA") and various state wage-and-hour laws by wrongly classifying and paying them as salaried managers rather than as hourly employees. Hourly employees, but not salaried managers, are entitled to overtime pay under the FLSA and state wage-and-hour laws.

Plaintiffs' amended complaint includes class-action claims under the laws of several states. To date, however, plaintiffs have not moved under Rule 23 of the Federal Rules of Civil Procedure for class certification with respect to their state-law claims. Instead, plaintiffs have pursued this case as an FLSA collective action under 29 U.S.C. § 216(a).

FLSA collective actions generally proceed in two stages. At the first stage, a class is conditionally certified on a relatively minimal showing, and then prospective plaintiffs can opt in to the action by filing consent forms. At the second stage, which almost always follows substantial discovery, plaintiffs must make a stronger showing to continue to proceed on a collective basis. If plaintiffs cannot make this stronger showing at the second stage, the conditionally certified class is decertified. *See generally Smith v. Heartland Auto. Servs.*, 404 F.Supp.2d 1144, 1149–50 (D.Minn.2005). Typically the second stage is triggered when the defendant moves to decertify the conditionally certified class.

Plaintiffs and KFC agreed in March 2006 that a single national FLSA class should be conditionally certified. Stip. Cond. Class Cert. [Docket No. 51]. Roughly 1000 assistant managers subsequently filed consent forms to opt in to that FLSA class. Then, in October 2006, plaintiffs filed an unusual motion: Plaintiffs moved to decertify the conditionally certified FLSA class, to break that single national FLSA class into multiple state-level FLSA classes, and to transfer each of the state-level FLSA class actions to a federal district court in the appropriate state. Pl. Mot. Decert. & Add Pls. [Docket Number 135]. The Court, adopting in part the Report and Recommendation of Magistrate Judge Jeanne J. Graham, granted the motion to decertify but denied the motion to transfer. Order June 4, 2007 [Docket No. 180], 2007 WL 1621458 (adopting in part R & R Jan. 23, 2007 [Docket No. 169], 2007 WL 1621464 ).

The Court stayed its order decertifying the FLSA class and, accordingly, has not yet dismissed this case. Meanwhile, many of the plaintiffs in this case have already filed new lawsuits in various federal courts around the country. All told, nearly thirty such lawsuits have been filed; the plaintiffs who filed those lawsuits are asking to proceed collectively. Other plaintiffs, however, have not filed new lawsuits but instead have sought to force KFC into arbitration. KFC contends that these latter plaintiffs—who number about 324—waived their right to arbitrate when they opted into this FLSA action. Mem. Supp. Def. Mot. at 2 [Docket No. 187]. KFC now moves for an order declaring that plaintiffs have waived their right to arbitrate and enjoining plaintiffs from proceeding with arbitration.

## II. ANALYSIS

KFC's motion presents two distinct questions, one substantive and one procedural. The substantive question is: Have plaintiffs in fact waived their right to arbitrate by pursuing this litigation? The procedural question is: Who decides whether plaintiffs have waived their right to arbitrate by pursuing this litigation: this Court or an arbitrator? The Court will address the latter question first.

### A. Who Decides?

■ Plaintiffs contend that this Court should not decide whether they have waived their right to arbitrate. Rather, plaintiffs say, that question must be decided by an arbitrator. Pl. Mem. Opp. Def. Mot. at 5–10 [Docket No. 194]. The Court disagrees.

■ Parties can waive their right to arbitrate in different ways. The Eighth Circuit has held that claims of waiver based on some types of conduct must be decided by courts, while claims of waiver based on other types of conduct must be decided by arbitrators. In particular, the Eighth Circuit held in *N & D Fashions, Inc. v. DHJ Industries, Inc.*, that *courts* generally decide whether a party has waived its right to arbitrate by "actively participat[ing] in a lawsuit or tak[ing] other action inconsistent with the right to arbitration." 548 F.2d 722, 728 (8th Cir.1976) (quotations omitted). By contrast, *arbitrators* generally decide claims of waiver that rest on the argument that arbitration "would be inequitable to one party because relevant evidence has been lost due to the delay of the other." *Id.* *N & D Fashions* described this second type of waiver claim as " 'waiver' ... in the sense of 'laches' or 'estoppel.' " *Id.*

This case involves an assertion of the first kind of waiver—waiver through litigation conduct—which, under *N & D Fashions*, is clearly for this Court to decide. But plaintiffs contend that *N & D*

*Fashions* is no longer good law in light of the Supreme Court's decision in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). Pl. Mem. Opp. Def. Mot. at 9 [Docket No. 194]. *Howsam* observed that questions of " 'waiver, delay, or a like defense to arbitrability' " are presumptively for arbitrators to decide. 537 U.S. at 84, 123 S.Ct. 588 (quotations omitted). In particular, *Howsam* quoted with approval the following comment to the Revised Uniform Arbitration Act of 2000: " '[I]ssues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.' " *Id.* at 85, 123 S.Ct. 588 (quoting Unif. Arbitration Act § 6, cmt. 2 (2000); emphasis removed).

On its face, *Howsam* seems entirely consistent with *N & D Fashions*. Again, *N & D Fashions* discussed two types of waiver: (1) waiver through litigation conduct (or other acts inconsistent with arbitration), which presents an issue for the court, and (2) waiver through delay (i.e., laches or estoppel), which presents an issue for the arbitrator. 548 F.2d at 728. Although *Howsam* referred loosely to "waiver" questions being decided by arbitrators, *Howsam* gave no indication that it intended to repudiate the traditional distinction between the different types of waiver. To the contrary, *Howsam* implicitly referred only to waiver based on laches or estoppel, and not to waiver based on litigation conduct, when *Howsam* quoted comment 2 to § 6 of the Revised Uniform Arbitration Act of 2000. *See Howsam*, 537 U.S. at 85, 123 S.Ct. 588. That comment defines "issues of procedural arbitrability" to include questions about "time limits, notice, *laches*, *estoppel*, and other conditions precedent to an obligation to arbitrate...." Unif. Arbi-

tration Act § 6, cmt. 2 (2000) (emphasis added).

If plaintiffs were relying on *Howsam* alone, the Court would readily find that *N & D Fashions* remains good law. Such a holding would be consistent with decisions from the First and Third Circuits that have carefully considered the impact of *Howsam* on the traditional division of labor between courts and arbitrators in resolving claims of waiver. *See Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 9–15 (1st Cir.2005) (discussing which types of waiver claims are for courts and which are for arbitrators in light of *Howsam* and *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003)); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215–21 (3d Cir.2007) (same).

Plaintiffs, however, do not rely on *Howsam* alone, but also on the Eighth Circuit's decision in *National American Insurance Co. v. Transamerica Occidental Life Insurance Co.*, 328 F.3d 462 (8th Cir.2003). In *National American*, the Eighth Circuit expressed the view that, in light of *Howsam*, a panel of arbitrators—and not the district court—should address Transamerica's contention that National American "waived the right to arbitrate because [National American] *pursued litigation* in the Oklahoma courts on reinsurance contracts to which Transamerica is a party." 328 F.3d 462, 466 (8th Cir.2003) (emphasis added). Plaintiffs argue that *National American* thus held that arbitrators (not courts) should decide waiver claims based on litigation conduct, leaving this Court without authority to decide KFC's motion.

The Court disagrees. *National American* said what it said, but, when *National American* is studied carefully, it becomes clear that the language cited by plaintiffs was dictum. In *National American*, the Eighth Circuit simply did not have before it an allegation that National American had waived its right to arbitrate *through*

*the pursuit of litigation*—that is, through conduct committed before a *judge*. Rather, the Eighth Circuit had before it an allegation that National American had waived its right to arbitrate *through its actions in an earlier arbitration*—that is, through conduct committed before an *arbitrator*.

In the *National American* opinion itself, the Eighth Circuit described the question before it as whether National American waived its right to arbitrate its claims against Transamerica when it commenced an arbitration proceeding against others but failed to join Transamerica as a party to that arbitration. In other words, the Eighth Circuit described the waiver claim as being based on something that National American did *not* do in the course of *arbitration*, rather than on something that National American *did* do in the course of *litigation*. *Id.* at 463.

That characterization was accurate. In its opening brief in the Eighth Circuit, Transamerica described its waiver position as follows:

> Because [National American] arbitrated the disputes with respect to the 1990 Reinsurance Contracts with others but [National American] did not seek to join Transamerica in such arbitration, it is Transamerica's position that [National American] defaulted in proceeding with arbitration against Transamerica. This default in proceeding with arbitration against Transamerica is the basis of Transamerica's claim of waiver.... By not seeking to join Transamerica in the Prior Arbitration, [National American] acted inconsistently with the right to arbitrate with Transamerica.

Brief of Appellant Transamerica at 12, *Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462 (8th Cir.2003) (No. 02–1992; brief filed May 30, 2002). The very first paragraph of the

*National American* opinion is consistent with Transamerica's description of its waiver argument. In that paragraph, the Eighth Circuit characterizes Transamerica as having "counterclaimed [in the district court] that [National American] had waived the right to arbitrate because the disputed contract was the subject of a prior arbitration." 328 F.3d at 463.

For unknown reasons, *National American* went on to refer in its concluding paragraph to waiver resulting from the pursuit of "litigation," rather than waiver resulting from National American's failure to join Transamerica in prior arbitration. It seems likely that this was just a slip of the pen. In any event, because no party to *National American* actually made a claim of waiver through pursuit of litigation, nothing that the Eighth Circuit said on that topic can be considered a binding holding.

This Court declines to follow the dictum in *National American* and instead follows the holding in *N & D Fashions,* along with the holdings of the First and Third Circuits that *Howsam* did not disturb the traditional rule of *N & D Fashions. See Marie,* 402 F.3d at 9–15; *Ehleiter,* 482 F.3d at 215–21. Under that traditional rule, claims of waiver through pursuit of litigation are to be decided by courts, not arbitrators. The Court therefore turns to the question whether plaintiffs have waived their right to arbitrate by pursuing litigation against KFC.

### B. Did Plaintiffs Waive Their Right to Arbitrate?

■ A party waives his or her right to arbitrate if three conditions are met: (1) the party knew of an existing right to arbitrate; (2) the party acted inconsistently with that right; and (3) those inconsistent acts prejudiced the other party. *Lewallen v. Green Tree Servicing, L.L.C.,* 487 F.3d 1085, 1090 (8th Cir.2007). All three conditions are met in this case.

■ As to the first condition, the 324 plaintiffs who now seek to arbitrate do not dispute that each of them signed an agreement including an arbitration clause; indeed, they seek to *invoke* that clause in forcing KFC into arbitration. Plaintiffs do argue, however, that they did not know of the contents of the agreements that they signed until KFC produced those agreements during this litigation. Plaintiffs thus deny that they knew of an existing right to arbitrate when they opted in to this suit. Pl. Mem. Opp. Def. Mot. at 11–12.

■ The assertion "I didn't know what was in the contract that I signed" is made by litigants frequently but almost never successfully. Absent fraud, a person is deemed to know the contents of a contract that he or she signs. *See Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144, 149 (2d Cir.2004); *N & D Fashions,* 548 F.2d at 727 (stating "the general rule of contract law that, in the absence of fraud, misrepresentation or deceit, one who executes a contract cannot avoid it on the ground that he did not read it or supposed it to be different in its terms"). Thus whether plaintiffs actually knew of the arbitration clause in their contracts is irrelevant; that knowledge is imputed as a matter of law.

As to the second condition, a party acts inconsistently with its right to arbitrate when it "substantially invokes the litigation machinery...." *Lewallen,* 487 F.3d at 1090. In this case, plaintiffs first opted into a national FLSA class, and then asked this Court to break that class into several state-level FLSA classes. Moreover, plaintiffs asked this Court to transfer the state-level FLSA classes to other courts, not to arbitrators. Plaintiffs thus substantially invoked the litigation machinery. Plaintiffs' actions demonstrate that their first-choice forum was federal court. Now that

the litigation has not gone as they hoped, plaintiffs want to turn to their second-choice forum, arbitration. Filing a case in federal court and seeking arbitration only after the litigation goes badly is acting inconsistently with the right to arbitrate.

Finally, whether KFC suffered prejudice—the third condition for waiver—is a closer question. The 324 arbitration-seeking plaintiffs argue that because they make up only about one-third of the total class, KFC was not prejudiced by their choice to opt in to this litigation, since the case would have proceeded with the other two-thirds of the plaintiff class in any event. Pl. Mem. Opp. Def. Mot at 15–17. In other words, these 324 plaintiffs argue that they imposed little (if any) *marginal* burden on KFC, given the actions of the other plaintiffs, who are not seeking arbitration. Plaintiffs' argument has surface appeal, but, for two reasons, the Court cannot accept it.

First, the Court disagrees with plaintiffs' contention that the prejudice inquiry should focus on the marginal prejudice caused by each individual member of the class. Only rarely does a particular member of a large class cause much in the way of marginal prejudice to a defendant. Under plaintiffs' approach, then, a class action could cause enormous prejudice to a defendant, and yet not one member of the class would be deemed responsible for that prejudice.

Individual class members bear collective responsibility for the actions of the entire class. Thus, the question is not whether any of these 324 plaintiffs caused marginal prejudice to KFC; the question is whether the entire class, of which these 324 plaintiffs were members, created prejudice to KFC by pursuing this litigation. Plainly the class did. KFC took depositions and other discovery that it would not have taken in arbitration; KFC and plaintiffs also engaged in substantial motion practice that would not have been necessary in arbitration.

Second, even if the Court were to focus on marginal-prejudice-per-plaintiff, the Court would still find that almost every plaintiff caused prejudice to KFC. The parties do not dispute that the American Arbitration Association's filing fee went up by $275 (from $625 to $900) on July 1, 2006. Thus as to each plaintiff who opted in to this litigation before July 1, 2006, KFC has been prejudiced by the fact that arbitration would now be more expensive than it would have been had that plaintiff sought arbitration instead of pursuing litigation. It appears that this is true with respect to all 324 plaintiffs, save perhaps one or two. Pl. Mem. Opp. Def. Mot at 17 ("[A]ll but two of [the 324 arbitration-seeking plaintiffs] opted into this case during ... February 2006 to May 2006....").

## ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant KFC Corporation's motion for an order declaring that plaintiffs have waived their right to arbitrate and enjoining plaintiffs from pursuing arbitration [Docket No. 185] is GRANTED.

2. The Court DECLARES that the 324 plaintiffs who opted in to this action and who have since filed arbitration demands with the American Arbitration Association have waived their right to arbitration with respect to the dispute at issue in this case.

3. The Court ENJOINS those 324 plaintiffs from proceeding with arbitration with respect to the dispute at issue in this case.