FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2014 APR 21 AM 11: 36



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DAMON TULIP, | No. 69306-9-I |
| Appellant, | DIVISION ONE |
| v. | |
| SERVICE CORPORATION INTERNATIONAL, SCI FUNERAL AND CEMETERY PURCHASING COOPERATIVE, INC., SCI WESTERN MARKET SUPPORT CENTER, L.P. a/k/a SCI WESTERN MARKET SUPPORT CENTER, INC., SCI WASHINGTON FUNERAL SERVICES, INC., GREENWOOD MEMORIAL PARK CEMETERY & FUNERAL HOME, JANE D. JONES, THOMAS RYAN, | UNPUBLISHED OPINION |
| Respondents. | FILED: April 21, 2014 |

SCHINDLER, J. — Damon Tulip filed a petition to compel arbitration of his state law wage claims after the class action wage claim lawsuits were dismissed and over three and one-half years after his employment ended. The court dismissed his petition to compel with prejudice. We affirm.

## FACTS

Service Corporation International (SCI) owns funeral homes nationwide. In September 2004, SCI Washington Funeral Services Inc. hired Damon Tulip to work at

Greenwood Memorial Park Cemetery and Funeral Home in Renton as a Family Service

Counselor and Community Service Counselor. Tulip signed a "Principles of

Employment" agreement (Agreement). The Agreement states that all disputes relating

to any aspect of Tulip's employment with SCI shall be resolved through binding

arbitration, and any claim must be presented in writing "within one year of the date the

claiming party knew or should have known of the facts giving rise to the claim."

The Agreement states, in pertinent part:

1.      Matters Subject To Arbitration. Employee and the Company agree
that, except for the matters identified in Section 2 below and except as
otherwise provided by law, all disputes relating to any aspect of
Employee's employment with the Company shall be resolved by binding
arbitration. This includes, but is not limited to, any claims against the
Company, its affiliates or their respective officers, directors, employees, or
agents for breach of contract, wrongful discharge, defamation,
misrepresentation, and emotional distress, as well as any disputes
pertaining to the meaning or effect of this Agreement. The arbitration shall
be conducted in accordance with the procedures attached hereto as
Exhibit "A." This agreement to arbitrate shall cover disputes arising both
before and after the execution of this document, except to the extent that
any litigation has already been filed as of the date hereof.
2.      Exclusions. It is expressly agreed and understood that this
Agreement shall not govern the following: (1) any claims brought under
federal discrimination laws (including Title VII of the Civil Rights Act) or
any other federal laws administered by the Equal Employment Opportunity
Commission, (2) claims for workers' compensation or unemployment
benefits, or (3) claims brought to enforce any noncompetition or
confidentiality agreement which may exist between the parties.
3.      Notification/Timeliness Of Claims. Any claim which either party has
against the other, other than a claim based on employment discrimination,
must be presented in writing by the claiming party to the other within one
year of the date the claiming party knew or should have known of the facts
giving rise to the claim. Otherwise, the claim shall be deemed waived and
forever barred even if there is a federal or state statute of limitations which
would have given more time to pursue the claim. . . .
      . . . .
      NOTICE TO EMPLOYEE: BY SIGNING THIS AGREEMENT, YOU
ARE AGREEING TO HAVE ANY AND ALL DISPUTES BETWEEN YOU
AND YOUR COMPANY (EXCEPT THOSE SPECIFICALLY EXCLUDED
IN SECTION 2 ABOVE AND THOSE OTHERWISE EXCLUDED BY

APPLICABLE LAW, IF ANY) DECIDED BY BINDING ARBITRATION AND YOU ARE WAIVING YOUR RIGHT TO A JURY OR COURT TRIAL.[1]

Tulip worked at SCI until September 2007.

In December 2007, a former SCI employee on behalf of a national class of SCI employees, including Tulip, filed a lawsuit in California state court against SCI, Bryant, et al. v. Service Corp. International, et al., No. RG 07359593 (Alameda County Super. Ct.).[2] The class action lawsuit alleged wage claims under state law. SCI removed the lawsuit to the United States District Court for the Northern District of California, Bryant, et al. v. Service Corp. International, et al., No. 3:08-cv-01190-SI (2008).

On January 15, 2008, James Stickle and several other named plaintiffs acting on behalf of a national class of SCI employees, sued SCI in federal court in Arizona alleging violation of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. ch. 8, Stickle, et al. v. SCI Western Market Support Center LP, et. al., No. 2:08-cv-00083-MHM (D. Ariz.).[3] The lawsuit alleged SCI did not pay the class members for all hours worked and did not pay overtime at one and one-half times the hourly wage. The suit also alleged SCI required pre-approval for overtime pay, deducted meal break hours from pay, and required employees to do "community work" without compensation. Stickle sought damages in the amount of plaintiffs' unpaid wages. The court

---

[1] (Some emphasis added) (boldface omitted).

[2] The defendants in Bryant were SCI, SCI Funeral and Cemetery Purchasing Cooperative Inc., SCI Western Market Support Center LP aka SCI Western Market Support Center Inc., Jane D. Jones, Thomas Ryan, Gwen Petteway, and Curtis Briggs.

[3] The defendants in Stickle were SCI, SCI Western Market Support Center, SCI Eastern Market Support Center, SCI Houston Market Support Center, SCI Funeral and Cemetery Purchasing Cooperative Inc., Jane D. Jones, Gwen Petteway, Thomas Ryan, Curtis Briggs, The SCI 401K Retirement Savings Plan, and Julie Douglas. The plaintiffs also alleged claims under the Employee Retirement Income Security Act, 29 U.S.C. ch. 18, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. ch. 96.

conditionally certified a class action on the FLSA claim and approximately 1,400 SCI employees opted into the class action lawsuit.

On December 14, 2009, Tulip filed a "Consent to Become A Party Plaintiff" in the Stickle lawsuit. The Consent to Become A Party Plaintiff states, in pertinent part:

> I consent to become a "party plaintiff," named, or a representative plaintiff in this action, seeking payment of unpaid wages under Federal or State law, including overtime wages, and related relief against my employer(s) including any individual(s) who may be considered my employer(s), on behalf of myself and other former and current employees of the employer(s). I am, or was employed by Alderwoods Group, Inc. and/or Service Corporation International.

The parties in the Stickle suit engaged in lengthy discovery on class certification. SCI propounded interrogatories and took approximately 60 depositions. In response to the interrogatories, Tulip states he was not paid for all time worked because SCI

1. encourag[ed] or requir[ed] hourly employees to participate in various community activities (church, Lion Club, Rotary International, Chamber of Commerce, etc.) so as to increase revenue for defendants but not compensating them on an hourly basis for such time spent engaging in community work; . . .
2. encourag[ed] or requir[ed] hourly employees to work by selling pre-needs policies after hours, . . .
3. encourag[ed] or requir[ed] hourly employees to take or teach training mandated by defendants outside of their normal work hours, . . .
4. encourag[ed] or requir[ed] hourly employees to deduct a full meal break from their work hours each day, even when such employees either missed their lunch breaks, or were interrupted during their lunch breaks, . . .
5. require[ed] pre-approv[al] from management for any overtime hours worked, and refus[ed] to pay hourly employees for overtime hours worked unless the overtime had been pre-approved by defendants; . . .
6. refus[ed] to allow hourly employees to properly record all overtime hours worked, . . . pressuring employees to underreport overtime hours worked . . . ; and
7. fail[ed] to include all remuneration (such as bonuses and commissions) when calculating the regular rate due to hourly employees for payment for overtime hours worked.

4

After more than two and one-half years of litigation in the Bryant case, the parties stipulated to dismiss the claims of the out-of-state class members, including Tulip. On July 22, 2010, the court entered an order of dismissal of the claims of the out-of-state plaintiffs without prejudice.

On October 5, 2010, Craig Emmick on behalf of a class of Washington employees, including Tulip, filed a lawsuit against SCI in King County Superior Court, Emmick, et al. v. Service Corp. International, et al., No. 10-2-35204-0 SEA.[4] The Emmick lawsuit against SCI alleged state law claims and sought to recover unpaid wages and unpaid overtime. SCI removed the Emmick lawsuit to the United States District Court for the Western District of Washington, Emmick, et al. v. Service Corp. International, et al., No. 2:10-cv-02027-MJP (2010).

On April 25, 2011, the United States District Court for the District of Arizona granted the motion to decertify the class action in Stickle and entered an order dismissing "the claims of all opt-in plaintiffs," including Tulip.

On May 2, 2011, SCI filed a motion to dismiss the Emmick lawsuit. SCI argued that the plaintiffs failed to state a claim for relief on a number of grounds including preemption. While the motion to dismiss was pending, the Emmick plaintiffs voluntarily dismissed their claims. The court entered the order of dismissal on May 17.

Two days later, Tulip sent SCI a "Demand for Arbitration" under the terms of the Agreement of his claims for unpaid wages, overtime, and other compensation. SCI did not respond to the demand for arbitration.

---

[4] The defendants in Emmick were SCI, SCI Funeral and Cemetery Purchasing Cooperative Inc., SCI Western Market Support Center Inc., SCI Washington Funeral Services Inc., Jane D. Jones, Gwen Petteway, and Thomas Ryan.

On November 15, 2011, Tulip filed a "Petition to Compel Arbitration" in King County Superior Court. Tulip sought to arbitrate claims "for unpaid overtime and other wages and compensation" under state law.[5] SCI filed an answer asserting the claims were time barred and Tulip waived his right to arbitration by participating in the prior litigation.

SCI filed a motion to dismiss arguing as a matter of law Tulip waived his right to arbitrate and his claims were barred by the statute of limitations. Tulip filed a motion for summary judgment arguing he was entitled to arbitration. Tulip argued that by participating in the class action lawsuits, he did not waive the right to arbitrate his state law wage claims under the Agreement. In opposition, SCI asserted the undisputed facts established Tulip waived the right to arbitration by participating in the Bryant, Stickle, and Emmick class action lawsuits. In support, SCI submitted his consent to become a party plaintiff in the Stickle lawsuit, the Stickle complaint and docket, Tulip's answers to interrogatories in Stickle, and the complaint and docket in Emmick.

The court dismissed the Petition to Compel Arbitration with prejudice. Tulip appeals.

## ANALYSIS

Tulip argues the court erred by dismissing his petition to compel arbitration. We review the decision on a motion to compel arbitration and summary judgment de novo.

---

[5] The petition stated that the "relevant statutes and regulations relating to Tulip's claims include" RCW 49.12.020 (providing that it is unlawful to employ any person "at wages which are not adequate for their maintenance"), RCW 49.48.010 (regarding authorized deductions and withholdings from pay), RCW 49.52.050 (providing that making false wage records is a misdemeanor), WAC 296-126-021 (regarding minimum wage calculation for employees receiving commission), WAC 296-126-025 (regarding deductions from final wages), and WAC 296-126-092 (regarding meal and rest periods).

Hartley v. State, 103 Wn .2d 768, 774, 698 P.2d 77 (1985); Zuver v. Airtouch Commc'ns, Inc., 153 Wn.2d 293, 302, 103 P.3d 753 (2004); CR 56(c). Waiver of the right to arbitrate is governed by federal law. Kinsey v. Bradley, 53 Wn. App. 167, 169, 765 P.2d 1329 (1989). Under federal law, "the ultimate determination of waiver is reviewed de novo, as a matter of law." Steele v. Lundgren, 85 Wn. App. 845, 850-51, 935 P.2d 671 (1997).

Waiver of the Right to Arbitrate

Section 2 of the Federal Arbitration Act, 9 U.S.C., is "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Accordingly, a party opposing arbitration bears a " 'heavy burden' " to show waiver of the right to arbitrate. Steele, 85 Wn. App. at 852 (quoting Fisher v. A.G. Becker Paribas Incorporation, 791 F.2d 691, 694 (9th Cir.1986)).

To establish waiver of the right to arbitration, the party opposing arbitration must prove (1) knowledge of an existing right to compel arbitration, (2) acts inconsistent with that right, and (3) prejudice to the party opposing arbitration. Kinsey, 53 Wn. App. at 169 (citing Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1187 (9th Cir.1986)). " 'The waiver determination necessarily depends upon the facts of the particular case and is not susceptible to bright line rules.' " Steele, 85 Wn. App. at 853 (quoting Cotton v. Slone, 4 F.3d 176, 179 (2d Cir.1993)).

Tulip contends SCI did not meet its heavy burden of showing he waived his right to arbitration. Tulip contends the state law wage claims are different than the federal

law wage claims asserted in Stickle, and his limited participation in the class action litigation was not inconsistent with his right to arbitration. SCI argues that Tulip's attempt to compel arbitration is an improper attempt to relitigate the same claims and seek the same relief he sought in the prior unsuccessful class actions. SCI argues Tulip acted inconsistently with the right to arbitrate under the Agreement by participating in Bryant, Stickle, and Emmick and waiting more than three and one-half years after he stopped working for SCI in September 2007 to request arbitration.

### 1. Knowledge

There is no dispute that Tulip signed the agreement to arbitrate in September 2004. "One is presumed to know and understand the contents of documents one signs." Kinsey, 53 Wn. App. at 171 (citing O'Neel v. Nat'l Ass'n of Sec. Dealers, Inc., 667 F.2d 804 (9th Cir. 1982)).[6] We conclude Tulip was aware of his right to arbitrate when he signed the Agreement in September 2004.

### 2. Acts Inconsistent with Arbitration

SCI argues that the undisputed facts establish Tulip acted inconsistently with the right to arbitrate under the terms of the Agreement by participating in Bryant, Stickle, and Emmick. Tulip claims he did not act inconsistently with the right to arbitrate his state law claims because Stickle involved only federal law wage claims brought under the FLSA, and because his participation in Stickle was limited. Whether a party acts inconsistently with the right to arbitrate is a fact-specific inquiry. Steele, 85 Wn. App. at 853.

---

[6] Tulip argues for the first time in his reply brief that he was never given a copy of his arbitration agreement. We do not consider an argument made for the first time in a reply brief. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (issue raised for the first time in a reply brief is too late to warrant consideration). Further, Tulip presented no evidence to support this assertion.

SCI contends the record establishes that there is no difference between the claims Tulip unsuccessfully litigated in Bryant, Stickle, and Emmick, and the claims he now seeks to arbitrate. Tulip claims Washington law is more protective and the FLSA wage claims asserted in Stickle are legally and factually distinct from the state law wage claims he seeks to arbitrate.

Tulip's demand for arbitration sought to arbitrate claims "for unpaid overtime and other wages and compensation." The overtime provisions of the FLSA and the Washington Minimum Wage Act (MWA), chapter 49.46 RCW, are nearly identical. Compare RCW 49.46.130(1) (providing that except as otherwise provided, an employer must pay his employees "one and one-half times the regular rate at which he or she is employed" for "a work week longer than forty hours") with 29 U.S.C. § 207 (providing that except as otherwise provided, any employer must pay his employees "one and one-half times the regular rate at which he is employed" for "a workweek longer than forty hours"). See also Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 871, 281 P.3d 289 (2012) (noting MWA is "patterned after the FLSA").[7]

---

[7] The federal cases Tulip relies on are distinguishable. None of these cases involve a plaintiff attempting to arbitrate state law claims despite already having litigated federal law claims arising out of the same facts and requesting the same relief. See MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 250 (4th Cir. 2001) (employer did not waive its right to arbitrate its employee's discrimination claim by litigating an unrelated trade secrets claim in a previous action); Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 133 (2nd Cir. 1997) (franchisor did not waive arbitration of breach of contract claim by litigating eviction action where claims did not involve the same "core facts"); Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 327 (5th Cir. 1999) (participation in prior litigation of nonarbitrable claims did not waive arbitration). Further, our cases have repeatedly stated that a court's waiver determination is based on the facts and circumstances of individual cases, not on bright line rules. See Steele, 85 Wn. App. at 853; Hill v. Garda CL Nw., Inc., 169 Wn. App. 685, 691, 281 P.3d 334 (2012) reversed on other grounds by 179 Wn.2d 47, 308 P.3d 635 (2013). Tulip also cites two federal cases for the proposition that litigating a class action is not inconsistent with later arbitration of state law claims. Beauperthuy v. 24 Hour Fitness USA, Inc., No. 06-715 SC, 2011 WL 6014438, at *5 (N.D. Cal. Dec. 2, 2011); Mansker v. Farmers Ins. Co. of Wash., No. C10-0511JLR, 2010 WL 3699847, at *3 (W.D. Wash. Sept. 14, 2010). Neither case addresses waiver of arbitration.

The FLSA and state law wage claims depend on the same facts and seek the same relief: unpaid overtime and other wages. Both claims relate to Tulip's employment with SCI from September 2004 to September 2007. Both claims allege failure to pay overtime wages, regular wages, and wages for missed break and meal times. The complaint in Stickle alleged that SCI violated the FLSA by failing to pay its employees for all hours worked and did not pay time and one-half for overtime hours.

In the alternative, Tulip argues that even if the federal and state law wage claims are not factually and legally distinct, he did not act inconsistently with his right to arbitrate by participating in the class actions because his participation was limited. SCI argues the three and one-half-year delay in seeking arbitration and his involvement in the class actions in federal court demonstrate that Tulip did not intend to arbitrate his claims.

"Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir.1995). "A party substantially invokes the litigation machinery when . . . it files a lawsuit on arbitrable claims." Lewallen v. Green Tree Servicing, LLC, 487 F.3d 1085, 1090 (8th Cir. 2007).

Here, Tulip substantially invoked the litigation machinery. The record establishes Tulip sought to resolve his wage claims in court rather than seek nonjudicial resolution through arbitration. Further, Tulip's consent to be a named plaintiff specifically states he was "seeking payment of unpaid wages under Federal and State law."

Tulip elected to litigate his wage claims, selecting federal court as his first-choice forum. Tulip affirmatively chose to litigate his wage claims by opting in as a plaintiff to an FLSA class action, stating, "I consent to become a 'party plaintiff,' named, or representative plaintiff in this action, seeking payment of unpaid wages under Federal or State law, including overtime wages, and related relief." Tulip remained a party in Stickle for one and one-half years, engaging in discovery and failing to raise the right to arbitrate. Tulip first made his demand for arbitration two days after the plaintiffs in Emmick voluntarily dismissed their wage claims. Tulip's decision to bring claims in federal court and to resort to arbitration only after dismissal of his claims is inconsistent with arbitration. Parler v. KFC Corp., 529 F. Supp. 2d 1009, 1015 (D. Minn. 2008); Welborn Clinic v. Medquist, Inc., 301 F.3d 634, 637 (7th Cir. 2002) ("[W]e do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration."). Further, the fact that Tulip did not demand SCI participate in arbitration until May 2011 provides some evidence that Tulip elected litigation. River House Dev., Inc. v. Integrus Architecture, PS, 167 Wn. App. 221, 239 n.4, 272 P.3d 289 (2012) ("While the ultimate issue of limitations in arbitration would have been for the arbitrator, the fact that River House had so far not filed a demand was some evidence it had elected litigation.").

Parler is analogous. In Parler, a nationwide class of assistant managers at Kentucky Fried Chicken (KFC) filed FLSA and state law wage claims against their employer. Parler, 529 F. Supp. 2d at 1011. The court conditionally certified a national class of employees. Approximately 1,000 employees opted into the FLSA class. Parler, 529 F. Supp. 2d at 1011. The plaintiffs then asked the court to decertify the

single nationwide class, divide the class into several state-level FLSA classes, and transfer those claims to federal district court. Parler, 529 F. Supp. 2d at 1011. The court granted the motion to decertify but denied the motion to transfer. Parler, 529 F. Supp. 2d at 1011.

Thereafter, over 300 employees sought to arbitrate their claims against KFC. Parler, 529 F. Supp. 2d at 1011. KFC argued those plaintiffs waived their right to arbitrate and the court agreed. Parler, 529 F. Supp. 2d at 1014. The court concluded that the plaintiffs "substantially invoked the litigation machinery" by opting into the national FLSA class and asking the court to transfer the claims to other courts rather than to an arbitrator. Parler, 529 F. Supp. 2d at 1014. The court stated the plaintiffs indicated their first-choice forum was a federal court and "[f]iling a case in federal court and seeking arbitration only after the litigation goes badly is acting inconsistently with the right to arbitrate." Parler, 529 F. Supp. 2d at 1014-15.

Based on the undisputed facts, we conclude Tulip's election to pursue potential class actions in federal court is inconsistent with arbitration under the terms of the Agreement.

### 3. Prejudice

SCI contends that the extent of litigation in federal court and Tulip's delay in seeking arbitration established prejudiced. Tulip argues SCI did not establish that the three and one-half-year delay and costs of discovery prejudiced SCI.

To determine whether the party opposing arbitration was prejudiced, the court examines the extent of the delay, the degree of litigation preceding the motion to compel arbitration, the resulting expenses, and other surrounding circumstances.

Steele, 85 Wn. App. at 858-59. Prejudice can be shown if a party does not demand arbitration during pretrial proceedings and engages in inconsistent acts:

> [W]hen a party fails to demand arbitration during pretrial proceedings, and in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party opposing a motion to compel arbitration may more easily show its position has been compromised, i.e., prejudiced.

Kinsey, 53 Wn. App. at 170.

In Steele, this court identified two types of prejudice and held that an unnecessary 10-month delay in bringing a demand for arbitration, coupled with aggressive discovery, satisfied the prejudice requirement:

> "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense."

Steele, 85 Wn. App. at 858-59[8] (quoting Kramer v. Hammond, 943 F.2d 176, 179 (2nd Cir. 1991)).

Here, Tulip made no demand to arbitrate for over three and one-half years after his employment ended and never asserted his right to arbitration in Bryant, Stickle, or Emmick. Tulip demanded arbitration under the Agreement only after his claims were dismissed in Bryant, Stickle, and Emmick. We conclude SCI met its burden to show the

---

[8] (Emphasis omitted.)

delay in seeking arbitration prejudiced SCI.[9]

We affirm dismissal of the petition to compel arbitration.

WE CONCUR:

---